**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| TILSON, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | |
| DISA, INC., ET AL. | 17-240-SDD-EWD |

## RULING

Before the Court is a *Motion to Dismiss Plaintiffs' Fifth Amended Complaint* ("Motion") filed by Defendant Clinical Reference Laboratory, Inc. ("Defendant" or "CRL").[1] Plaintiffs Emile Tilson, Jr. (individually referred to as "Tilson") and Debra Tilson (individually referred to as "Mrs. Tilson") (collectively referred to as "Plaintiffs" or "Tilsons") have filed an *Opposition to Defendant's Motion to Dismiss Plaintiff's Fifth Amended Complaint* ("Opposition") to which the Defendant has filed a *Reply*.[2] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. Oral argument is unnecessary. For the following reasons, the Motion shall be **GRANTED IN PART** and **DENIED IN PART.**

### I.   FACTUAL BACKGROUND[3]

Tilson was employed by Turner Industries ("Turner") as a boilermaker, pipefitter, and member of the reactor crew who worked at the Exxon petrochemical plant in Baton Rouge, Louisiana. Tilson was subject to a work-related random drug

---

[1] Rec. Doc. 45.
[2] Rec. Docs. 65 & 73.
[3] Rec. Doc. 42, Fifth Supplemental and Amending Complaint.
46421

test. A Turner employee collected Tilson's urine specimen, *and* sent it to CRL, an independent testing lab, for testing.

After an initial test and a second confirmatory test, CRL reported to Turner's Medical Review Officer ("MRO") that Tilson's urine tests reflected the presence of marijuana metabolite at a concentration of 14 ng/mL. The marijuana concentration reporting threshold ordered by Turner was 10 ng/mL In other words, Turner required CRL to report as "positive" results above 10 ng/mL. Turner terminated Tilson as a result of the test results.

On March 6, 2017, Tilson filed suit in state district court against DISA Global Solutions, Inc. ("DISA"), Psychemedics Corporation, and Clinical Pathology Laboratories, Inc. ("CPL")[4] alleging various claims arising from the collection, testing, and reporting of the workplace drug test. On November 15, 2017, Tilson filed a "Fifth Supplemental and Amending Petition for Damages" against CRL and co-defendants DISA, Exxon, and Dr. Randy Barnett.

Tilson alleges that CRL was hired "to perform the urine drug test and the confirmation second test on Mr. Tilson's urine specimen. CRL allegedly falsely reported that Mr. Tilson's sample tested positive for the presence of marijuana, a prohibited substance."[5] Tilson alleges that CRL violated state and federal workplace drug testing rules, specifically the Louisiana Drug Testing Statutes ("LDTSA"),[6] the U.S. Department of Transportation's ("DOT") Procedures for Workplace Drug and

---

[4] DISA is a third-party administrator for drug testing that reports the results of drug tests from specimens analyzed by a laboratory and reported by a Medical Review Officer. Rec. Doc. 27.
[5] Rec. Doc. 42 at 6.
[6] La. R.S. 49:1001-1021.
46421

Alcohol Testing Programs,[7] the Pipeline and Hazardous Materials Safety Administration's ("PHMSA") drug and alcohol testing program,[8] and the U.S. Department of Health and Human Services ("HHS") Mandatory Guidelines for federal drug testing. Tilson claims that CRL negligently interpreted or failed to exclude other causes for Tilson's marijuana positive test result and defamed Tilson. Tilson also alleges a violation of his civil rights under the 5th and 14th Amendments, invasion of privacy, "interference with his employment;" and violations of HIPAA, the Americans with Disabilities Act, the Louisiana Employment Discrimination Law, and the Louisiana Human Rights Act. Tilson seeks damages for wrongful termination, loss of earnings, emotional and psychological pain and suffering, and injury to his reputation. Mrs. Tilson asserts loss of consortium and damages for emotional and psychological pain and suffering.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" In

---

[7] 49 C.F.R. § 40.1, *et seq.* ("Part 40").
[8] 49 C.F.R. § 199.1, *et seq.*
46421

Twombly, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."

### B. Negligence Claims

Tilson alleges that "Defendants owed [him] a duty to undertake and perform random drug tests in compliance with company guidelines, practices, and procedures along with Louisiana and Federal law."[9] Tilson alleges that CRL owed breached statutory duties arising under LDTSA, DOT and PHMSA drug testing regulations. In a negligence action under Louisiana law, Tilson bears the burden of proving duty,

---

[9] Rec. Doc. 42 at 9.
46421

breach, causation and damages.[10] Whether a duty exists is a question of law.[11]

    1. <u>LDTSA</u>[12]

Tilson alleges CRL breached its "statutory duty," under LDTSA, *inter alia,* because his drug test results were not reviewed by an MRO prior to his termination. In direct contradiction of this claim, Tilson's Complaint concedes that an MRO reviewed his laboratory test result. Tilson's claim that CRL breached LDTSA for failure to submit test results to an MRO is far from plausible.

CRL concedes that LDTSA "provides mandatory procedures for covered employers in conducting workplace drug testing,"[13] but CRL contends that, because Tilson was working at a petrochemical plant, LDTSA is inapplicable. By its express terms, the LDTSA does not apply "to any person, firm, or corporation engaged or employed in the exploration, drilling, or production of oil or gas in Louisiana or its territorial waters."[14] Although the Complaint alleges that Tilson, employed by Turner, worked at the Exxon petrochemical plant, this allegation alone is insufficient to permit the Court to conclude that Tilson or the Exxon workplace was "engaged or employed in the exploration, drilling, or production of oil or gas." While affidavits or other summary judgment evidence may establish this as a fact, the Court's analysis on a Motion to Dismiss is confined to the four corners of the Complaint.

---

[10] *Wainwright v. Fontenot,* 00-492 (La. 10/17/00), 774 So. 2d 70, 74 (citing *Buckley v. Exxon Corp.,* 390 So. 2d 512, 514 (La. 1980)).
[11] *Barrie v. V.P. Exterminators, Inc.,* 625 So. 2d 1007, 1015 (La. 1993); *see also Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.,* No. 04-0997, 2005 U.S. Dist. LEXIS 10328, at *16 (E.D. La. May 19, 2005).
[12] Louisiana Drug Testing Statute La. R.S. 49:1001, *et seq.*
[13] Rec. Doc. 45-1 at 7.
[14] La. R.S. 49:1002(H).
46421

CRL further argues that, even if LDTSA applies, Louisiana does not recognize a claim for wrongful termination resulting from a drug test performed in violation of the LDTSA; thus, Tilson fails to state a claim for relief as a matter of law. CRL cites to cases which hold that the LDTSA does not supplant or otherwise create an exception to Louisiana's employment at-will doctrine.[15] An employer's failure to follow the statutory requirements does not provide basis for claim of wrongful termination. The cases cited by CRL hold that LDTSA does prohibit an employer from terminating an employee at-will.

The Court does not find these cases applicable to Tilson's claims against CRL, an independent testing lab. While an employer may find shelter from the LDTSA under the employment at will doctrine, CRL does not. The LDTSA would be rendered meaningless if the employment at will defense were extended to third parties who collect, test, and report workplace drug tests.

Tested against the rigors of FRCP Rule 12(b)(6), Tilson's claim that the LDTSA imposes a duty on CRL survives dismissal. The *Motion to Dismiss* Tilson's negligence claim arising out of the LDTSA is DENIED.

   2. Federal Statutes

Plaintiff alleges "upon information and belief" that CRL breached duties arising under federal workplace drug testing regulations, namely DOT, PHMSA and HHS workplace drug testing regulations. Tilson inartfully intermingles PMHSA and DOT regulations and makes no specific allegations regarding HHS regulations. The Court

---

[15] *Sanchez v. Ga. Gulf Corp.,* 02-904 (La. App. 1 Cir. 11/12/03), 860 So. 2d 277, 282-83; *Narcisse v. Turner Indus. Grp., LLC,* No. 11-2659, 2012 U.S. Dist. LEXIS 60533, at *8 (E.D. La. Apr. 30, 2012) (dismissing claims against employer for violation of the drug testing statute).
46421

dismisses claims asserted under HHS regulations for failure to state a claim. The Court evaluates separately Plaintiff's claims that PMHSA and the DOT regulations create a legal duty on CRL.

   a. *PMHSA*

Tilson alleges that he is a covered employee under PMSHA based on his job duties at the Exxon facility.[16] PHMSA regulations require operators of certain pipeline facilities to test covered employees for the presence of prohibited drugs and alcohol.[17] CRL moves dismissal asserting that "PHMSA regulations apply to pipeline operators, not workplace drug testing laboratories like CRL."[18] In opposition to the Motion to Dismiss, Tilson argues that he "does not fall under the exceptions in § 199.2(c)(1) because the chemical facility [where he works] transports petroleum gas/catalyst mixtures via pipeline and is not a master meter system."[19] Tilson cites to extra-record information to support his argument.[20] As previously stated, on a Motion to Dismiss, the inquiry is whether the allegations in the Complaint plausibly state a claim for relief. The Court's analysis is limited to the allegations in Complaint. The Complaint makes no factual allegations which would bring CRL within the scope of the PMSHA drug testing regulations. Accordingly, Plaintiff's negligence claims related to PMHSA shall be DISMISSED.

---

[16] Rec. Doc. 42 at 9.
[17] 49 C.F.R. § 199.1.
[18] Rec. Doc. 45-1 at 8 (citing 49 CFR § 199.2(a)).
[19] Rec. Doc. 65 at 5.
[20] See Exxon Mobil, 2017 Baton Rouge Chemical Plant Fact Sheet, http://cdn.exxonmobil.com/~/media/global/files/us-refineries/2017_brcp_fact_sheet.pdf.
46421

*b. DOT Regulations: Negligent Interpretation of the Sample*

Tilson argues "CRL improperly used the initial cut-off level of 20 ng/mL and the confirmation cut-off level of 10 ng/mL" and that under the DOT regulations "the required cut-off levels for marijuana are 50 ng/mL for the initial test and 15 ng/mL for the confirmation test."[21] Thus Tilson argues that his urinalysis should have been reported as negative, and that CRL's failure to abide the federal regulations caused his harm.

CRL moves dismissal arguing that, even if Tilson is a covered employee under the regulations, CRL is not Tilson's employer and owed no duty to test or report results in accordance with DOT cut-offs. CRL argues that since it is not Tilson's employer, CRL had no duty to "make a determination of whether Tilson's urine specimen was required to have been tested pursuant to the provisions of DOT or PHMSA regulations."[22] Plaintiff concedes that "Tilson's urine specimen was collected as a non-federal specimen."[23] The Court finds that, as matter of law, CRL has no duty under Louisiana law to test his non-federally regulated urine specimen pursuant to DOT drug testing regulations. The employer is the drug tester. Where the employer specifies the parameters of the clinical test and, as in the case, the laboratory performed the test and reported findings as instructed by the employer, if the choice of testing parameters was negligent, the negligence is attributable to the employer, not the testing lab.[24] Tilson's Complaint fails to make a plausible claim of negligence for non-compliance with DOT testing regulations

---

[21] Rec. Doc. 65 at 5.
[22] Rec. Doc. 45-1 at 9.
[23] Rec. Doc. 65 at 5.
[24] *Hale v. Smith/Kline Beecham Clinical Labs.*, No. 98-55218, 1999 U.S. App. LEXIS 31373, at *1 (9th Cir. Nov. 24, 1999).
46421

and CRL's *Motion to Dismiss* negligence claims allegedly arising from DOT regulations is GRANTED.

       3. <u>Negligent Specimen Collection</u>

The Plaintiffs' Fifth Amended Complaint fails to distinguish claims made against the three defendants against whom allegations are made.[25] To the extent that Plaintiffs assert a claim of negligent specimen collection against CRL, the Complaint fails to state a claim. There are no allegations in the Complaint which would allow the Court to plausibly find that CRL performed any act other than testing the sample, collected by others, and reported the results. CRL owed no duty to Tilson relative to the collection of the sample by others.[26]

       4. <u>Negligent Failure to Exclude Alternative Explanations for the Positive Findings</u>

Tilson alleges, again without specificity, that "Defendants" failed "to evaluate the possibility of cross-reactivity with prescription medications,"[27] failed to ask Tilson about his medications, failed to consult with Tilson prior to reporting his results, and "did not examine alternate medical explanation or legitimate medical reasons for the false positive result."[28] The Court finds that CRL owed no duty to Tilson to inquire about or consider

---

[25] Rec. Doc. 42. The Fifth Amended Complaint alleges claims in globo against DISA Global Solutions, Inc., Randy Barnett. D.O., and Exxon Mobil Corp. d/b/a Exxon Mobil Chemical Co.
[26] *Santiago v. Greyhound Lines, Inc.,* 956 F. Supp. 144, 154-55 (N.D.N.Y. 1997) (testing laboratories owe no duty to provide collectors with procedural guides on how to collect specimens or to examine the chain of custody form for irregularities); *Blakeman v. Emergency USA,* 83 Va. Cir. 269, 275-76 (Cir. Ct. 2011) (testing laboratory had no duty to review actions of the specimen collector).
[27] Rec. Doc. 42 at 7.
[28] *Id.*
46421

other information.[29] Tilson's negligence claims against CRL arising from the collection of his urine specimen, reporting and interpretation of the test results fails as a matter of law.

### C. Defamation

To state a claim for defamation, Tilson must allege facts which would allow the Court to plausibly find (1) a false and defamatory statement; (2) an unprivileged publication to a third-party by CRL; (3) fault (negligence or greater) on the part of CRL; and (4) resulting injury.[30] Tilson's only specific allegations as to CRL are that CRL tested Tilson's urine specimen and "falsely reported" to Turner's designated MRO that his urine specimen "tested positive for the presence of marijuana".[31]

Plaintiff's allegation of false reporting are not plausible considering the Court's ruling that the DOT cut-off regulations do not impose any duty on CRL to report Tilson's test results as negative. There is no allegation that the result, using the lower employer mandated cut-offs was false or inaccurate. Since Plaintiff cannot plausibly demonstrate falsity, his defamation claim fails and the *Motion to Dismiss* the defamation claim is GRANTED.

### D. HIPAA

Again, devoid of specificity, Tilson alleges that "Defendants" violated his rights under HIPAA. HIPAA regulates covered entities with access to individuals' identifiable health care transaction records and imposes penalties for improper disclosure of confidential medical information.[32] However, only the Secretary of the U.S. Department of Health and Human Services, and in certain circumstances state

---

[29] *Cooper v. Lab. Corp. of Am. Holdings,* 181 F.R.D. 312, 320-22 (D.S.C. 1997) (no duty regarding interpretation, specifically no duty to inform employer of alternate reasons for positive test results), *aff'd on other grounds,* 150 F.3d 376 (4th Cir. 1998).
[30] *Costelb v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129, 139 (quoting *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So.2d 552, 559).
[31] Rec. Doc. 42 at 6.
[32] *Acara v. Banks,* 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. § 1320d-1; 42 U.S.C. § 1320d-o.
46421

attorneys general, have the authority to enforce HIPAA and alleged violations of the statute.[33] There is no express or implied private cause of action to enforce violations of HIPAA provisions.[34] The *Motion to Dismiss* is GRANTED and Tilson's HIPAA claim is dismissed as a matter of law.

### E. Constitutional Due Process Claims

Tilson alleges that his workplace "drug testing was in violation of the Due Process Clause of the 5th and 14th amendments."[35] There is no allegation that any act or omission by CRL constitutes state action.[36] The Plaintiffs' constitutional violation claims fail as a matter of law. The *Motion to Dismiss* the constitutional claims is GRANTED.

### F. Employment Discrimination Claims

Tilson claims violations of the ADA, Louisiana Employment Discrimination Law ("LEDL"), and the Louisiana Human Rights Act ("LHRA").[37] These acts prohibit discrimination by an employer.[38] There is no allegation that CRL was Tilson's employer. To the contrary, Plaintiff pleads, and it is undisputed that Turner was his employer. The

---

[33] 42 U.S.C. § 1320d-5(d) (1)-(3)).

[34] *Id.* n 24; *see also*, *Dominic J. v. Wyo. Valley W. High Sch.,* 362 F. Supp. 2d 560, 572 (M.D. Pa. 2005) ("No federal court reviewing the matter has ever found that Congress intended HIPAA to create a private right of action.")(quoting *Swift v. Lake Park High Sch. Dist. 108*, No. 03-5003, 2003 WL 22388878 at *4 (N.D. Ill. Oct. 21, 2003)).

[35] Rec. Doc. 42 at 7.

[36] *Johnson v. Fred's Stores of Tenn.,* 115 F. App'x 196, 198 (5th Cir. 2004) (noting an employee in the private sector cannot make out a due process violation against an employer in the private sector in the absence of evidence that the employer's acts are somehow attributable to government); *Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir. 2000) ("The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor."); *Pellerin-Mayfield v. Goodwill Indus., SELA, Inc.,* No. 02-3774, 2003 U.S. Dist. LEXIS 16462, at *8-9 (E.D. La. Sep. 12, 2003) ("It is a well-settled tenet of federal law that state action is a condition precedent to a claim under the Fourteenth Amendment." (citing *US v. Stanley,* 109 U.S. 3, 11 (1883) ("Individual invasion of individual rights is not the subject matter of the [Fourteenth] Amendment."))).

[37] Rec. Doc. 42 at 11.

[38] *E.E.O.C v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014) ("The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" (quoting 42 U.S.C. § 12112(a))); La R.S. 23:302(2)(defining employer within the meaning of Louisiana's anti-discrimination statute).

46421

Plaintiff's employment discrimination claims against CRL fail as a matter of law, and the *Motion to Dismiss* is GRANTED on these claims.

### G. Tortious Interference Claims

To the extent Tilson asserts asserting a tortious interference with business relations claim against CRL, the claim fails as a matter of law. To state a claim for tortious interference with business relations under Louisiana law, the plaintiff must allege facts demonstrating that CRL improperly and maliciously influenced others not to deal with him.[39] The gravamen of Tilson's claims is that CRL should have used a higher confirmatory testing cut-off level for marijuana than the 10 ng/mL cut-off requested by Turner. As stated, the Court finds that CRL had no duty to use any higher threshold reporting. Thus, as a matter of law, CRL's reporting the presence of marijuana metabolites in Tilson's urine sample is not improper or malicious interference with his employment. There is no allegation that CRL acted maliciously in the reporting of Tilson's test results to Turner's designated MRO. Absent plausible factual allegations of malice, ill will, or spite, the claim fails and the *Motion to Dismiss* is GRANTED.

### H. Loss of Consortium Claim

Mrs. Tilson alleges she suffered, including loss of enjoyment of life, lost medical benefits, loss of consortium, and emotional pain and suffering as a result of CRL's testing of Tilson's urine specimen. A claim for loss of consortium is derivative

---

[39] *Bogues v. La. Energy Consultants, Inc.,* 46,434 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1128, 1134-35 (Louisiana law protects a businessperson from "malicious or wanton interference," although it permits "interferences designed to protect legitimate interests of the actor") (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594 (5th Cir. 1981)).
46421

of the predicate tort claim.[40] As to each of Tilson's claims dismissed herein, Mrs. Tilson's loss of consortium claims are dismissed and the Motion to Dismiss is GRANTED in part and DENIED in part.

Signed in Baton Rouge, Louisiana on June 26, 2018.

_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[40] *Ferrell v. Fireman's Fund Ins. Co.,* 96-3028, (La. 7/1/97), 696 So.2d 569, 576.
46421