UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

EMILE TILSON, JR.                              CIVIL ACTION
AND DEBRA TILSON

VERSUS                                         17-240-SDD-EWD

DISA, INC., DISA GLOBAL SOLUTIONS,
INC., ET. AL.

## RULING

This matter is before the Court on the *Rule 12(b)(2) and 12(b)(5) Motion to Dismiss*[1] by Defendant Dr. Randy Barnett ("Dr. Barnett" or "MRO"). Plaintiffs Emile Tilson, Jr. ("Tilson") and Debra Tilson ("Mrs. Tilson") (collectively, "Plaintiffs") have filed an *Opposition*[2] to this motion to which Dr. Barnett has filed a *Reply*.[3] For the following reasons, the Court finds that the Defendant's motion to dismiss should be GRANTED.

## I.    FACTUAL BACKGROUND[4]

Tilson was employed by Turner Industries ("Turner") as a boilermaker, pipefitter, and member of the reactor crew who worked at the Exxon petrochemical plant in Baton Rouge, Louisiana. Tilson was subject to a work-related random drug test. A Turner employee collected Tilson's urine specimen and sent it to CRL, an independent testing lab, for testing.[5]

---

[1] Rec. Doc. 76.
[2] Rec. Doc. 93.
[3] Rec. Doc. 103.
[4] Rec. Doc. 42, *Fifth Supplemental and Amending Complaint.*
[5] *Id.* at ¶ 11.
49713

After an initial test and a second confirmatory test, CRL reported to Turner's Medical Review Officer ("MRO") that Tilson's urine tests reflected the presence of marijuana metabolite at a concentration of 14 ng/mL. The marijuana concentration reporting threshold ordered by Turner was 10 ng/mL. In other words, Turner required CRL to report as "positive" results above 10 ng/mL. Tilson was terminated by Turner based on the test results.[6]

On March 6, 2017, Tilson filed suit in state district court against DISA Global Solutions, Inc. ("DISA"), Psychemedics Corporation, and Clinical Pathology Laboratories, Inc. ("CPL"),[7] alleging various claims arising from the collection, testing, and reporting of the workplace drug test. On November 15, 2017, Tilson filed a *Fifth Supplemental and Amending Petition for Damages*[8] against Dr. Barnett and co-defendants, Exxon, CRL, and DISA.

As to Dr. Barnett specifically, Plaintiffs allege "DISA hired the MRO to review Mr. Tilson's test result."[9] "Upon information and belief," Dr. Barnett is alleged to have "improperly concluded that [Tilson's] urine specimen was positive for an illegal substance and identified Mr. Tilson as a drug user, an 'inactive' employee and ineligible to return to work."[10] Plaintiffs' remaining claims are blanket allegations against all Defendants, collectively. Tilson's against "Defendants" include unlawful termination following the positive drug test, violations of Tilson's civil rights, invasion of privacy, "interference with

---

[6] *Id.* at ¶¶ 6, 16.
[7] Rec. Doc. 27; DISA is a third-party administrator for drug testing that reports the results of drug tests from specimens analyzed by a laboratory and reported by a Medical Review Officer.
[8] Rec. Doc. 42.
[9] *Id.* at ¶11.
[10] *Id.*

49713

his employment," negligence, violation of state and federal law including Americans with Disabilities Act, the Louisiana Employment Discrimination Law, the Louisiana Human Rights Act, the Louisiana Drug Testing Statutes ("LDTSA"), the NIDA guidelines, the U.S. Department of Transportation's ("DOT") Procedures for Workplace Drug and Alcohol Testing Programs, the Pipeline and Hazardous Materials Safety Administration's ("PHMSA") drug and alcohol testing program, HIPPA, and the U.S. Department of Health and Human Services' ("HHS") mandatory guidelines for federal drug testing.[11]

Dr. Barnett contends that Plaintiffs cannot establish minimum contacts for the Court's exercise of personal jurisdiction over him because Dr. Barnett was not the MRO assigned to the drug test at issue.[12] Further, Dr. Barnett argues that even if he had contacts with Louisiana, "such conduct would not have conferred specific personal jurisdiction over Dr. Barnett."[13]

## II. LAW

### A. General Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident.[14] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a prima facie case of personal jurisdiction.[15] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts

---

[11] *See* Rec. Doc. 42; *Fifth Supplemental and Amending Complaint.*
[12] Rec. Doc. 76-1, p. 11.
[13] *Id.* at p. 13.
[14] *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985); *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 332 (5th Cir. 1982, *cert den.* 450 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).
[15] *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir.1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 [1985], and *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir.1986), *cert. den.*, 481 U.S. 1015 (1987).

49713

between the parties' affidavits must be resolved in the plaintiff's favor.[16]

To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery ... But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[17] "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."[18]

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located."[19] Thus, personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment. In this case, these two queries merge into one because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause of the U.S. Constitution.[20]

Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general jurisdiction" over any action brought

---

[16] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir.1985).
[17] *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (holding that a district court erred in requiring a plaintiff to establish more than a prima facie case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[18] *Id.* at 245 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).
[19] *Walk Haydel*, 517 F.3d at 242.
[20] *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *St. Martin & Mahoney v. Patton*, 863 F.Supp. 311, 313–14 (E.D.La.1994).
49713

against the defendant.[21]  Where contacts are less pervasive, a court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[22]

### B. Specific Jurisdiction

The constitutional requirements for specific jurisdiction may be satisfied by showing that the defendant has sufficient "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice."[23]  The Fifth Circuit follows a three-step analysis for this determination.  First, a court must determine "whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[24]

This "minimum contacts"/"purposeful availment" inquiry is fact intensive.  No one element is decisive, and the number of contacts with the forum state is not, by itself, determinative.[25]  A single, substantial act directed toward the forum can support specific jurisdiction,[26] but even multiple contacts, if "[r]andom, fortuitous, or attenuated ... are not sufficient to establish jurisdiction."[27]  What is significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the privileges or benefits

---

[21] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
[22] *Id.* at 414; *Luv N' care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[23] *Luv N' care*, 438 F.3d at 469 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).
[24] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958).
[25] *Luv N' care*, 438 F.3d at 470.
[26] *See ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir.1990).
[27] *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479 (1985)).
49713

of the laws of the forum state.[28]

Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[29] At this step, the proper focus in the analysis is on the "relationship among the defendant, the forum, and the litigation."[30] This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."[31]

Finally, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable."[32] In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[33] "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[34]

### C. Minimum Contacts

Personal jurisdiction may not be avoided merely because a defendant did not

---

[28] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Hanson* 357 U.S. at 251, 254); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983), *cert. den.*, 466 U.S. 962 (1984).
[29] *Nuovo Pignone*, 310 F.3d at 378.
[30] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).
[31] *Conwill v. Greenberg Traurig, L.L.P., et al.*, No. 09-4365, 2009 WL 5178310 at *3 (E.D.La. Dec. 22, 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)).
[32] *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382).
[33] *Luv N' care*, 438 F.3d at 473; *see also, Burger King Corp.*, 471 U.S. at 476–77 (listing 7 factors).
[34] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008)(citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).
49713

physically enter the forum state. Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a state in which business is conducted. As long as a commercial actor's efforts are "purposefully directed" toward residents of the state in question, courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[35]

Even so, "merely contracting with a resident of the forum state does not establish minimum contacts."[36] "A contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."[37]

Although a single act, such as a telephone call or mailing a letter, can be sufficient to establish minimum contacts, precedent is clear that communications alone are insufficient when "the communications with the forum did not actually give rise to [the] cause of action."[38] Rather, when communications relating to conducting business are the only contacts, courts generally require some type of "continuing obligations" between the

---

[35] *Burger King*, 471 U.S. at 476–77.
[36] *Moncrief Oil*, 481 F.3d at 311.
[37] *Burger King*, 471 U.S. at 479 (internal citations omitted).
[38] *Wein Air*, 195 F.3d at 213; *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir.1992).
49713

defendant and residents of the forum, such as is found in an ongoing business relationship, to find that the defendant availed himself of the privilege of conducting business in the forum. Only then, "because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[39]

On the other hand, for claims of intentional tort, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[40] "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[41]

## III. ANALYSIS

Applying the law to the facts of this case, the Court finds that it lacks general jurisdiction over Dr. Barnett. Plaintiffs do not controvert that Dr. Barnett is domiciled and resides in Pennsylvania and has declared under penalty of perjury that he is not a citizen of Louisiana, has never worked in Louisiana, and does not have an office in Louisiana.[42] Dr. Barnett states that he does not have any employees or agents in Louisiana, and does not conduct or solicit business in Louisiana.[43] Further, Dr. Barnett declares that he was not involved in the collection, testing, evaluation, or interpretation of the drug test at issue.

---

[39] *Burger King*, 471 U.S. at 476.
[40] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir.1984)(holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)).
[41] *Wein Air*, 195 F.3d at 213 (5th Cir.1999); *see also, Ross*, 246 Fed.Appx. 856, 859–60 (5th Cir. 2007)(deeming allegations that out of state counsel communicated false information to client in Texas alone sufficient to make prima facie case of specific personal jurisdiction).
[42] Rec. Doc. 76-2; *Declaration of Randy B. Barnett, D.O.*
[43] *Id.*
49713

In support of his contention that he was not the MRO assigned to Tilson's case, Dr. Barnett attached a "Medical Review Officer Worksheet," which lists Jerome Cooper as the MRO and details a phone interview between Jerome Cooper and Tilson concerning Tilson's drug test.[44] This document includes the date and time of Tilson's call to University Services concerning the drug test, Jerome Cooper's phone interview with Tilson, as well as the results being verified by Jerome Cooper.[45] Tilson appears to rely on a "DISA Drug Test Result Certificate," signed by Dr. Barnett as the MRO,[46] to support his assertion that Dr. Barnett handled the drug test at issue. However, this document does not indicate any communication, or any conduct at all, on the part of Dr. Barnett. Furthermore, none of Plaintiffs' submissions contain an allegation that Dr. Barnett transacted business within Louisiana. Plaintiff has failed to plead facts in their *Complaint*[47] to establish that Dr. Barnett has "continuous and systematic" contact with the state such that Dr. Barnett could be considered "at home" in Louisiana.

In their *Opposition*, Plaintiffs argue that, because Dr. Barnett reviews "hundreds of Louisiana employees," and has a relationship with DISA, his contacts are more than sufficient to justify the Court's exercise of personal jurisdiction over him.[48] Although not binding on this Court, the Eastern District of New York analyzed similar allegations that an MRO reviewed multiple drug tests of employees within the court's jurisdiction.[49] There, the court found that, "although it was arguably foreseeable that [the MRO] would review

---

[44] Rec. Doc. 76-1, p. 7.
[45] *Id.*
[46] Rec. Doc. 93-1.
[47] Rec. Doc. 42.
[48] *Id.* at pp. 3, 7.
[49] *Drake v. Laboratory Corp. of America Holdings*, 2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008).
49713

drug tests of New York employees, that connection did not arise from any purposeful action by [the MRO] directed toward New York; rather, it was simply a consequence of [the MRO's] duties to review drug tests of Delta employees, wherever they were based."[50] The court analogized the MRO's activities to that of a manufacturer who places its product in the marketplace and found the MRO's actions insufficient to establish the minimum contacts required by due process.[51]

Similarly, although it is arguable that Dr. Barnett would review drug tests of Louisiana employees, "[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State."[52] Even accepting as true the allegation that Dr. Barnett reviewed the drug test at issue, he is not alleged to have purposefully directed his conduct toward Louisiana.

Plaintiffs argue the *Complaint* contains enough facts that establish minimum contacts for the Court to exercise specific jurisdiction over Mr. Barnett.[53] Plaintiffs appear to borrow language, almost verbatim, from the Eastern District of Louisiana's ruling in *Loiacano v. Disa Global Solutions, Inc.*[54] Plaintiffs reiterate, without citing *Loiacano*, several cases discussed therein which all generally stand for the proposition that a defendant has minimum contacts sufficient for the exercise of specific jurisdiction when the contents of the communication give rise to an alleged intentional tort.[55] In *Loiacano*,

---

[50] *Id.* at *5.
[51] *Id.* (citing *World-Wide Volkswagen,* 444 U.S. at 298 ("[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (citations and internal quotation marks omitted)).
[52] *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987).
[53] Rec. Doc. 93, p. 3.
[54] 2014 WL 5317872 (E.D. La. Oct. 16, 2014).
[55] *Id.*; Rec. Doc. 93, p. 4.
49713

a case involving similar facts, the MRO, an independent contractor for DISA domiciled in Texas, made two phone calls to the Louisiana plaintiff to discuss the drug test results at issue in that case. The court determined it lacked jurisdiction over the MRO because the plaintiff did not allege that the MRO's communications gave rise to an intentional tort.[56] The court reasoned:

> While the exercise of personal jurisdiction could otherwise be reasonable in regard to the nature and quality of the communications in light of the claims asserted, because the Defendant's communications do not give rise to an intentional tort cause of action, this Court cannot find that the Defendant purposefully availed herself of the forum to support this Court's exercise of specific jurisdiction over the nonresident Defendant.[57]

Plaintiffs attempt to distinguish *Loiacano,* and the cases cited therein, by contending that, in this case, Plaintiffs have plead the intentional tort of defamation. Thus, Plaintiffs argue that Dr. Barnett's contacts with Louisiana are sufficient for the exercise of specific jurisdiction. However, Plaintiffs have not plead any contacts with Louisiana. Although Plaintiffs are correct that, in the context of intentional torts, "the minimum contacts test is satisfied by a single act," Tilson admits that "he did not receive a call from the MRO."[58] In fact, the record evidence demonstrates the opposite. The "Medical Review Officer Worksheet"[59] for Tilson's drug test, filed by Dr. Barnett, details a phone interview with Tilson concerning the drug test results. However, the MRO who conducted the phone interview is listed as Jerome Cooper, D.O.[60] Considering that the facts of *Loiacano* are

---

[56] *Id.* at *3.
[57] *Loiacano* at *3-*4.
[58] Rec. Doc. 42, ¶17.
[59] Rec. Doc. 76-2.
[60] *Id.* at 7, 8.
49713

nearly identical to the facts of this case, the Court finds that it lacks personal jurisdiction over Dr. Barnett. Therefore, Dr. Barnett's Rule 12(b)(2) motion shall be granted.

## IV. CONCLUSION

For the reasons set forth above, Defendant's *Rule 12(b)(2) and 12(b)(5) Motion to Dismiss*[61] is GRANTED on the Rule 12(b)(2) motion for lack of personal jurisdiction. Plaintiff's claims against Dr. Randy Barnett are hereby dismissed without prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on January 22, 2019.

_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[61] Rec. Doc. 76.
49713